IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11- 01950 (RHK/LIB) |
| NORTHSTAR MATERIALS, INC. (d/b/a KNIFE RIVER MATERIALS) and KNIFE RIVER CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**CONSENT DECREE**

WHEREAS, the Plaintiff, the United States of America, on behalf of the United States Army Corps of Engineers ("Corps"), filed the Complaint herein against Defendants Northstar Materials, Inc. (d/b/a Knife River Materials) and Knife River Corporation (collectively, "Defendants"), alleging that Defendants violated Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a);

WHEREAS, the Complaint alleges that Defendants violated CWA Section 301(a) by discharging dredged or fill material and/or controlling and directing the discharge of dredged or fill material into waters of the United States at a site located in Beltrami County, Minnesota (the "Site") and more fully described in the Complaint, without authorization by the Corps;

WHEREAS, the Complaint seeks (1) to enjoin the discharge of pollutants into waters of the United States in violation of CWA Section 301(a), 33 U.S.C. § 1311(a); (2) to require Defendants, at their own expense and at the direction of the Corps, to restore and/or mitigate the

damages caused by their unlawful activities; and (3) to require Defendants to pay civil penalties as provided in 33 U.S.C. § 1319(d);

WHEREAS, the Defendants expressly deny the allegations and liability alleged in the Complaint and assert that they have meritorious defenses to all allegations;

WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of the United States' claims under the CWA set forth in the Complaint regarding the Site;

WHEREAS, the United States and Defendants agree that settlement of this case is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the United States' claims under the CWA against Defendants in this case; and

WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of the United States' claims against Defendants in this case, and that this Consent Decree adequately protects the public interest in accordance with the CWA and all other applicable federal law.

THEREFORE, before the taking of any testimony upon the pleadings, without further proceedings or any adjudication of any issue of fact or law, and upon consent of the parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of these actions and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

2.      Venue is proper in the District of Minnesota pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), because the Defendants conduct business in this District, the subject property is located in this District, and the causes of action alleged herein arose in this District.

3.      The Complaint states claims upon which relief can be granted pursuant to Sections 301, 309 and 404 of the CWA, 33 U.S.C. §§ 1311, 1319 and 1344.

## II.  APPLICABILITY

4.      The obligations of this Consent Decree shall apply to and be binding upon Defendants, their officers, directors, agents, employees and servants, and their successors and assigns and any person, firm, association or corporation who is, or will be, acting in concert or participation with any of the Defendants whether or not such person has notice of this Consent Decree.  In any action to enforce this Consent Decree against a Defendant, the Defendant shall not raise as a defense the failure of any of its officers, directors, agents, employees, successors or assigns or any person, firm or corporation acting in concert or participation with the Defendant, to take any actions necessary to comply with the provisions hereof.

5.      The transfer of ownership or other interest in all or a portion of the Restoration Areas or Temporal Impact Replacement Areas (as shown on Figure 3 of Appendix A, Northstar Materials, Inc. Wetland Restoration Plan dated April 18, 2011, appended hereto and incorporated herein by reference) prior to termination of this Consent Decree shall not alter or relieve Defendants of their obligation to comply with all of the terms of this Consent Decree.  At least fifteen (15) days prior to such transfer of ownership or other interest in the Restoration Areas or Temporal Impact Replacement Areas, the party making such transfer shall provide written notice

and a true copy of this Consent Decree to the transferee and shall simultaneously notify the Corps and the United States Department of Justice at the addresses specified in Section X below that such notice has been given. As a condition to any such transfer, the Defendant making the transfer shall reserve all rights necessary to comply with the terms of this Consent Decree until such time the Consent Decree is terminated.

### III. SCOPE OF CONSENT DECREE

6. This Consent Decree shall constitute a complete and final settlement of all civil claims for injunctive relief and civil penalties alleged in the Complaint against the Defendants under CWA Section 301 concerning the Site.

7. It is the express purpose of the parties in entering this Consent Decree to further the objectives set forth in CWA Section 101, 33 U.S.C. § 1251. All plans, construction, remedial maintenance, monitoring programs, and other obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing Defendants to achieve and maintain full compliance with, and to further the purposes of, the CWA.

8. Defendants' obligations under this Consent Decree are joint and several.

9. Except as in accordance with this Consent Decree, Defendant Northstar Materials, Inc., its agents, successors and assigns are enjoined from discharging any pollutant into waters of the United States, unless such discharge complies with the provisions of the CWA and its implementing regulations. For purposes of determining compliance with the Consent Decree, this paragraph shall not apply to discharges by Defendant Knife River Corporation.

10. This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344, or any other law. Nothing in this Consent Decree shall limit the ability of the Corps to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the United States Environmental Protection Agency's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c). Notwithstanding this provision, Defendants are authorized by the Corps of Engineers, St. Paul District's general permit for completed enforcement actions (RGP-003-MN) to perform the wetland restoration and wetland creation activities described in Appendix A, including the discharge of dredged or fill material.

11. This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with any applicable federal, state, or local law, regulation or permit.

12. This Consent Decree in no way affects the rights of the United States as against any person not a party to this Consent Decree.

13. The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree and applicable law.

14. Nothing in this Consent Decree shall constitute an admission of fact or law by any party.

## IV.  SPECIFIC PROVISIONS

### CIVIL PENALTIES

15.  Defendants shall pay a civil penalty to the United States in the amount of Fifty-five Thousand Dollars ($55,000), within 30 days of entry of this Consent Decree.

16.  Defendants shall make the above-referenced payment by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing the U.S.A.O. file number (2010v00217) and the DOJ case number (90-5-1-1-18739).  Payment shall be made in accordance with instructions provided to the Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Minnesota.  Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day.

17.  Upon payment of the civil penalty required by this Consent Decree, Defendants shall provide written notice, at the addresses specified in Section X of this Consent Decree, that such payment was made in accordance with Paragraph 16.

18.  Civil penalty payments pursuant to this Consent Decree (including stipulated penalty payments under Section IX) are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), or of 26 C.F.R. § 1.162-21 and are not tax deductible expenditures for purposes of federal law.

### RESTORATION, MITIGATION AND PRESERVATION

19. Defendants shall perform wetland restoration and wetland creation under the terms and conditions stated in Appendix A, Northstar Materials, Inc. Wetland Restoration Plan dated April 18, 2011, appended hereto and incorporated herein by reference. The wetland creation is required to offset the temporal effects of the unauthorized discharges.

20. Defendants shall perform public outreach activities as generally specified in Appendix B, Knife River Corporation Wetland Resource Public Information Outreach Campaign dated April 1, 2011, appended hereto and incorporated by reference.

21. Within 30 days of the entry of this Consent Decree, Defendants shall submit to the Corps a complete application for an after-the-fact permit for all material discharged into wetlands at the Site that will not be removed as part of the restoration described in Appendix A. In the event the Corps issues an after-the-fact permit, Defendants shall comply with the terms and conditions of the permit, including any mitigation requirement. In the event the Corps denies the after-the-fact permit application, Defendants shall comply with the terms of any Restoration Order that may be issued.

### V. NOTICES AND OTHER SUBMISSIONS

22. Within 30 days after the deadline for completing any task set forth in Appendix A or B of this Consent Decree, Defendants shall provide the United States with written notice, at the addresses specified in Section X of this Consent Decree, of whether or not that task has been completed

23. If the required task has been completed, the notice shall specify the date when it was completed, and if the required task has not been completed, explain the reasons for any

7

delay in completion beyond the scheduled time for such completion required by the Consent Decree.

24. In all notices, documents or reports submitted to the United States pursuant to this Consent Decree, the Defendants shall, by signature of a senior management official, certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## VI. RETENTION OF RECORDS AND RIGHT OF ENTRY

25. Until ten (10) years after entry of this Consent Decree, Defendants shall preserve and retain all records and documents now in their possession or control or which come into their possession or control that relate in any manner to the performance of the tasks in Appendix A or B, regardless of any corporate retention policy to the contrary. Until ten (10) years after entry of this Consent Decree, Defendants shall also instruct their contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the tasks in Appendix A or B.

26. At the conclusion of the document retention period, Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Defendants shall deliver any such records or documents to the Corps. The Defendants may assert that certain documents, records and other information are

privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Defendants assert such a privilege, they shall provide the United States with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

27. A. Until termination of this Consent Decree, the United States and its authorized representatives and contractors shall have authority at all reasonable times to enter the Defendants' premises to:

    1. Monitor the activities required by this Consent Decree;

    2. Verify any data or information submitted to the United States;

    3. Obtain samples;

    4. Inspect and evaluate Defendants' restoration and/or mitigation activities; and

    5. Inspect and review any records required to be kept under the terms and conditions of this Consent Decree and the CWA.

B. This provision of this Consent Decree is in addition to, and in no way limits or otherwise affects, the statutory authorities of the United States to conduct inspections, to require monitoring and to obtain information from the Defendants as authorized by law.

## VII.  DISPUTE RESOLUTION

28.     Any dispute that arises with respect to the meaning or requirements of this Consent Decree shall be, in the first instance, the subject of informal negotiations between the United States and Defendants affected by the dispute to attempt to resolve such dispute.  The period for informal negotiations shall not extend beyond thirty (30) days beginning with written notice by one party to the other affected party or parties that a dispute exists, unless agreed to in writing by those parties.  If a dispute between the United States and Defendants cannot be resolved by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fourteen (14) days after the end of the informal negotiations period, the Defendants file a motion with the Court seeking resolution of the dispute.  The motion shall set forth the nature of the dispute and a proposal for its resolution.  The United States shall have thirty (30) days to respond to the motion and propose an alternate resolution.  In resolving any such dispute, the Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree and the CWA, and that the Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

29.     If the United States believes that a dispute is not a good faith dispute, or that a delay would pose or increase a threat of harm to the public or the environment, it may move the Court for a resolution of the dispute prior to the expiration of the thirty (30) day period for informal negotiations.  The Defendants shall have fourteen (14) days to respond to the motion and propose an alternate resolution.  In resolving any such dispute, the Defendants shall bear the

burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree, and that the Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

30. The filing of a motion asking the Court to resolve a dispute shall not extend or postpone any obligation of Defendants under this Consent Decree, except as provided in Paragraph 38 below regarding payment of stipulated penalties.

## VIII. FORCE MAJEURE

31. Defendants shall perform the actions required under this Decree within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by events which constitute a Force Majeure event. A Force Majeure event is defined as any event arising from causes beyond the control of Defendants, including their employees, agents, consultants and contractors, which could not be overcome by due diligence and which delays or prevents the performance of an action required by this Consent Decree within the specified time period. A Force Majeure event does not include, inter alia, increased costs of performance, changed economic circumstances, changed labor relations, normal precipitation or climate events, changed circumstances arising out of the sale, lease or other transfer or conveyance of title or ownership or possession of a site, or failure to obtain federal, state or local permits.

32. If Defendants believe that a Force Majeure event has affected Defendants' ability to perform any action required under this Consent Decree, Defendants shall notify the United States in writing within seven (7) calendar days after the event at the addresses listed in Section X. Such notice shall include a discussion of the following:

    A. what action has been affected;

      B.      the specific cause(s) of the delay;

      C.      the length or estimated duration of the delay; and

      D.      any measures taken or planned by the Defendants to prevent or minimize the delay and a schedule for the implementation of such measures.

Defendants may also provide to the United States any additional information that they deem appropriate to support their conclusion that a Force Majeure event has affected their ability to perform an action required under this Consent Decree. Failure to provide timely and complete notification to the United States shall constitute a waiver of any claim of Force Majeure as to the event in question.

33. If the United States determines that the conditions constitute a Force Majeure event, then the deadline for the affected action shall be extended by the amount of time of the delay caused by the Force Majeure event. Defendants shall coordinate with the Corps to determine when to begin or resume the operations that had been affected by any Force Majeure event.

34. If the parties are unable to agree whether the conditions constitute a Force Majeure event, or whether the length of time for fulfilling the provision of the Consent Decree at issue should be extended, any party may seek a resolution of the dispute under the procedures in Section VII of this Consent Decree.

35. Defendants shall bear the burden of proving (1) that the noncompliance at issue was caused by circumstances entirely beyond the control of Defendants and any entity controlled by Defendants, including their contractors and consultants; (2) that Defendants or any entity

controlled by Defendants could not have foreseen and prevented such noncompliance; and (3) the number of days of noncompliance that were caused by such circumstances.

## IX.  STIPULATED PENALTIES

36. After entry of this Consent Decree, if Defendants fail to timely fulfill any requirement of the Consent Decree (including Appendices A and B), the Defendants shall pay a stipulated penalty to the United States for each violation of each requirement of this Consent Decree as follows:

| | | |
|---|---|---|
| A. | For Day 1 up to and including Day 30 of non-compliance | $1000.00 per day |
| B. | For Day 31 up to and including 60 of non-compliance | $2,000.00 per day |
| C. | For Day 61 and beyond of non-compliance | $3,000.00 per day |

Such payments shall be made without demand by the United States on or before the last day of the month following the month in which the stipulated penalty accrued.

37. Any disputes concerning the amount of stipulated penalties, or the underlying violation that gives rise to the stipulated penalties, that cannot be resolved by the parties pursuant to the Dispute Resolution provisions in Section VII and/or the Force Majeure provisions in Section VIII shall be resolved upon motion to this Court as provided in Paragraphs 28 and 29.

38. The filing of a motion requesting that the Court resolve a dispute shall stay Defendants' obligation to pay any stipulated penalties with respect to the disputed matter pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall continue to accrue from the first day of any failure or refusal to comply with any term or

condition of this Consent Decree. In the event that Defendants do not prevail on the disputed issue, stipulated penalties shall be paid by Defendants as provided in this Section.

39. To the extent Defendants demonstrate to the Court that a delay or other non-compliance was due to a Force Majeure event (as defined in Paragraph 31 above) or otherwise prevail on the disputed issue, the Court shall excuse the stipulated penalties for that delay or non-compliance.

40. In the event that a stipulated penalty payment is applicable and not made on time, interest will be charged in accordance with the statutory judgment interest rate provided for in 28 U.S.C. § 1961. The interest shall be computed daily from the time the payment is due until the date the payment is made. The interest shall also be compounded annually.

41. Defendants shall make any payment of a stipulated penalty by EFT to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing the U.S.A.O. file number (2010v00217) and the DOJ case number (90-5-1-1-18739). Payment shall be made in accordance with instructions provided to the Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Minnesota. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day. Further, upon payment of any stipulated penalties, Defendants shall provide written notice, at the addresses specified in Section X of this Decree.

## X. ADDRESSES

42. All notices and communications required under this Consent Decree shall be made to the parties through each of the following persons and addresses:

A.   <u>TO THE UNITED STATES DEPARTMENT OF JUSTICE</u>

   Ms. Ana H. Voss
   U.S. Attorney's Office
   600 U.S. Courthouse
   300 South Fourth Street
   Minneapolis, Minnesota 55415

B.   <u>TO THE CORPS</u>:

   Timothy J. Smith, Enforcement Coordinator
   Regulatory Branch
   U.S. Army Corps of Engineers, St. Paul District
   180 Fifth Street East, Suite 700
   St. Paul, MN 55101-1678

   Molly A. McKegney
   Office of Counsel
   U.S. Army Corps of Engineers, St. Paul District
   180 Fifth Street East, Suite 700
   St. Paul, MN 55101-1678

C.   <u>TO DEFENDANTS</u>:

   Doug Muyres
   President
   Northstar Materials, Inc.
   P.O. Box 40
   Bemidji, MN 56619-0040

   Karl Liepitz
   Attorney
   Knife River Materials
   P.O. Box 5650
   Bismarck, ND 58503-5650

   Edward Pettit (Ned)
   Environmental Manager
   Knife River Corporation
   PO Box 5568
   Bismarck ND 58506-5568

## XI. COSTS OF SUIT

43.     Each party to this Consent Decree shall bear its own costs and attorneys' fees in this action.  Should Defendants subsequently be determined by the Court to have violated the terms or conditions of this Consent Decree, Defendants shall be liable for any costs or attorneys' fees incurred by the United States in any action against Defendants for noncompliance with or enforcement of this Consent Decree.

## XII. PUBLIC COMMENT

44.     The parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7, which provides for public notice and comment.  The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts that lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.  The Defendants agree not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Consent Decree.

## XIII. CONTINUING JURISDICTION OF THE COURT

45.     This Court shall retain jurisdiction over this action in order to enforce or modify the Consent Decree consistent with applicable law or to resolve all disputes arising hereunder as may be necessary or appropriate for construction or execution of this Consent Decree.  During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the Consent Decree.

## XIV. MODIFICATION

46. Upon its entry by the Court, this Consent Decree shall have the force and effect of a final judgment. Any modification of this Consent Decree shall be in writing, and shall not take effect unless signed by both the United States and the Defendants and approved by the Court.

## XV. TERMINATION

47. This Consent Decree may be terminated by either of the following:

    A. Defendants and the United States may at any time make a joint motion to the Court for termination of this Decree or any portion of it; or

    B. Defendants may make a unilateral motion to the Court to terminate this Decree after each of the following has occurred:

        1. Defendants have obtained and maintained compliance with all provisions of this Consent Decree and the CWA for twelve (12) consecutive months;

        2. Defendants have paid all penalties and other monetary obligations hereunder and no penalties or other monetary obligations are outstanding or owed to the United States;

        3. Defendants have certified compliance pursuant to subparagraphs 1 and 2 above to the Court and all Parties; and

        4. within forty-five (45) days of receiving such certification from the Defendants, has not contested in writing that such compliance has been achieved.

If the Corps disputes Defendants full compliance, this Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.

IT IS SO ORDERED.

Dated and entered this 26th day of August, 2011.

                                                  s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge

ON BEHALF OF THE UNITED STATES:

B. TODD JONES
United States Attorney

<u>s/ Ana H. Voss</u>         Dated: <u>7-18-11</u>

BY:  ANA H. VOSS
Assistant U.S. Attorney
Attorney ID No. 483656
U.S. Attorney's Office
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
(612) 664-5600

Attorney for the United States


FOR DEFENDANT NORTHSTAR MATERIALS, INC.


BY     <u>s/Doug Muyres</u>         Dated:<u>7-13-2011</u>
         Doug Muyres
         President
         P.O. Box 40
         Bemidji, MN 56619-0040


FOR DEFENDANT KNIFE RIVER CORPORATION


BY     <u>s/Nancy K. Christenson</u>    Dated: <u>July 13, 2011</u>
         Nancy K. Christenson
         Vice President- Administration
         P.O. Box 5568
         Bismarck, ND 58506-5568